**RUBBERMAID, INC., Appellee,**

v.

**HARTFORD STEAM BOILERS INSPECTION CO., INC., Appellant.***

[Cite as *Rubbermaid, Inc.,* v. *Hartford Steam Boilers Inspection Co., Inc.* (1994), 96 Ohio App.3d 406.]

Court of Appeals of Ohio,
Wayne County.

No. 2835.

Decided Aug. 10, 1994.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was overruled in (1994), 71 Ohio St.3d 1446, 644 N.E.2d 417.

*Thomas Schick,* for appellee.

*C. Reynolds Keller* and *Kim M. Hastings,* for appellant.

Cook, Judge.

In this case involving a "business interruption" clause of an insurance policy, Industrial Risk Insurers ("IRI") and the companies which comprise IRI, one of which is Hartford Steam Boiler Inspection and Insurance Company ("HSB"), appeal the trial court's denial of their motions for a directed verdict, a new trial and a judgment notwithstanding the verdict. IRI contends that the trial court erred (1) in not directing a verdict because Rubbermaid, Inc. ("Rubbermaid") failed to present sufficient evidence to prove it lost profits with reasonable certainty; (2) in not granting a new trial because the court did not instruct the jury that if it found Rubbermaid had sufficient inventory on hand to meet its orders, then Rubbermaid experienced no lost profits; and (3) in not reducing the jury verdict because the maximum recovery supported by Rubbermaid's evidence was only $1,264,720, not the $3,165,148 awarded by the jury. We affirm because (1) Rubbermaid produced sufficient evidence to prove its lost profits under the business interruption clause; (2) a new trial was not warranted as the trial court

properly instructed the jury; and (3) the jury's verdict of $3,165,148 was supported by sufficient evidence.

## I. *THE INSURANCE POLICY*

In 1987, IRI issued Rubbermaid an insurance policy which included business interruption coverage for mechanical breakdown. The business interruption coverage was included as Part B of the policy and stated, in pertinent part, the following:

"SECTION I

"A. Subject to all its provisions, this policy insures against loss resulting directly from necessary interruption of business caused by damage to real or personal property, except finished stock * * *.

"B. Recovery in the event of loss hereunder shall not exceed the ACTUAL LOSS SUSTAINED by the Insured resulting directly from such interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such described property as has been damaged * * *.

" * * *

"C. RESUMPTION OF OPERATIONS—It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business,

"1. by complete or partial resumption of operation of the property herein described, whether damaged or not, or

"2. by making use of raw stock, stock in process or finished stock * * * at the location(s) described herein or elsewhere, or

"3. by making use of merchandise * * * at the location(s) described herein or elsewhere, or,

"4. by making use of other property at the location(s) described herein or elsewhere,

"such reduction shall be taken into account in arriving at the amount of loss hereunder.

"SECTION II

"A. EXPERIENCE OF THE BUSINESS—In determining the amount of net profit, charges and expenses covered * * * for the purpose of ascertaining the amount of loss sustained * * * due consideration shall be given to the experience of the business before the date of damage and the probable experience thereafter had no loss occurred."

The general conditions of the policy excluded any coverage of losses caused by or resulting from loss of market. General Conditions, Section II, Part B(1).

## II. *THE BUSINESS INTERRUPTION*

### a. *July Breakdown*

On July 12, 1988, the hydraulic cylinder of the 2800–ton press at Rubbermaid's Wooster plant failed. The press was used to produce Rubbermaid's product # 2898 ("the product"), a thirty-two gallon refuse container. The product had been in full production only since 1987.[1] Rubbermaid shipped the mold for the product to another manufacturer, which produced 28,704 units of the product from August 15 to September 30. The mold was returned to the Wooster plant for reconditioning and then shipped to Rubbermaid's Centerville, Iowa plant, Rubbermaid's commercial production division. The Centerville plant produced 131,418 units of the product from October 16 to February 1, 1989.

### b. *February Breakdown*

On February 12, 1989, while the mold for the product was being reinstalled on the Centerville press, it broke. Rubbermaid, therefore, was unable to manufacture the product from that date until the end of the third week of May. In March, Rubbermaid put the product on special order status because Rubbermaid believed that it could not service its customers at the rate the orders were being placed. Before the July breakdown, an appropriation request for a second mold had been made. Thus, during May, 8,800 units of the product were manufactured by Rubbermaid on the repaired press in Wooster with that replacement mold and in June, full production began again.

### c. *The Suit*

Rubbermaid submitted to IRI a business interruption claim for the July breakdown of approximately $2.4 million and for the February breakdown of approximately $1.2 million. Rubbermaid based its claim upon the underlying assumption that it would sell every unit of the product that it could produce within the period of loss. IRI's position was that the business interruption period for the July breakdown ended October 16, when Rubbermaid began producing the product on its Centerville press. IRI also disputed that Rubbermaid experienced any business interruption loss as a result of the February breakdown because Rubbermaid's inventory of the product did not fall below the sales of the product.

---

1. The product had been minimally produced in 1986.

Rubbermaid sued IRI and thirty-two insurance companies which comprise IRI for breach of contract seeking damages pursuant to the business interruption policy of insurance. On behalf of all the named defendants, HSB answered and counterclaimed. The suit was tried before a jury with the only issue for the jury's determination being the amount, if any, Rubbermaid should recover for business interruption loss under the policy. The parties had stipulated to $659,603 as the property damage and extra expenses and the trial court instructed the jury to award that amount as property damage and extra expenses. IRI moved for a directed verdict, which the trial court denied. The jury returned a verdict in favor of Rubbermaid in the amount of nearly $3.2 million and the trial court reduced it to approximately $2.5 million in consideration of the amount IRI had previously paid Rubbermaid. IRI moved for a new trial and for judgment notwithstanding the verdict, which the trial court denied.

IRI now appeals, asserting three assignments of error.

### Assignment of Error One

"The trial court erred in overruling appellant's motion for a directed verdict."

With this assignment of error, IRI contends that the trial court erred in denying its motion for a directed verdict because Rubbermaid failed to present evidence sufficient to prove its claim for lost profits with reasonable certainty. IRI contends that Rubbermaid's only evidence of lost sales was that Rubbermaid failed to meet the sales projections it set in the early marketing stages of the product. Under Civ.R. 50(A)(4), a trial court may only enter a directed verdict if, after construing the evidence most strongly in favor of the party against whom the motion is directed, it finds that upon any determinative issue, reasonable minds could come to but one conclusion, which is adverse to that party.

It is well established that proof of lost profits must be established with reasonable certainty. *AGF, Inc. v. Great Lakes Heat Treating Co.* (1990), 51 Ohio St.3d 177, 555 N.E.2d 634, paragraph two of the syllabus. The insurance policy specifically stated that "[i]n determining the amount of net profit * * * for the purpose of ascertaining the amount of loss sustained * * * due consideration shall be given to the experience of the business before the date of damage and the probable experience thereafter had no loss occurred."

In this case, the product upon which Rubbermaid based its claim was newly developed and had been on the market for approximately a year and a half prior to the July breakdown. Rubbermaid presented the following evidence: (1) the sales record of the product from its beginning, which showed that the product's sales declined during the business interruption period; (2) the sales of the product to the fifteen biggest customers for 1987, 1988, 1989 and 1990; (3)

forecasted sales; (4) how Rubbermaid sold its products; (5) an average 19 percent growth of sales for the entire refuse line in 1987, 1988, and 1989; (6) the 15.6 percent growth rate per year in sales to one significant customer; (7) the appropriation request for a second mold because capacity of the first mold was being exceeded; (8) how Rubbermaid recorded its perpetual inventory; (9) Rubbermaid was selling all of the product it could make and had customers waiting for the product; and (10) its need for a commercially reasonable inventory.

While Rubbermaid did not present evidence concerning actual lost sales to specific customers, construing the evidence most strongly in Rubbermaid's favor, we find that reasonable minds could come to more than one conclusion as to whether Rubbermaid suffered business interruption losses. Thus, the trial court did not err in denying IRI's motion for a directed verdict.

The first assignment of error is overruled.

### Assignment of Error Two

■ "The trial court erred in overruling appellant's motion for a new trial."

With this assignment of error, IRI contends that the trial court erred in overruling its motion for a new trial because the trial court had failed to give the jury instructions it requested. The proposed instructions included the following: (1) for purposes of business interruption coverage, lost production does not automatically equal lost sales; thus, if Rubbermaid had sufficient inventory on hand to meet sales of the product, then it had no lost sales; and (2) Rubbermaid was not entitled to recover for any claimed loss of market share. As neither Rubbermaid nor IRI produced any evidence concerning market share, we find that the loss of market share instruction was irrelevant to the jury's determination of lost profits. While the insurance policy required that inventory be used to reduce the loss from the business interruption, the policy did not require that the inventory be completely depleted as IRI contends. The trial court instructed the jury (1) that Rubbermaid's recovery, if any, could not exceed the actual loss sustained directly resulting from the business interruption; (2) that in determining the net profit, due consideration should be given to the experience of the business before the date of damage and the probable experience thereafter had no loss occurred; and (3) that lost profits must be established with reasonable certainty and not where they are remote or speculative. We find that the trial court properly instructed the jury.

Under Civ.R. 59(A), a new trial may be granted upon the grounds of "[e]rror in the amount of recovery, whether too large or too small, when the action is upon a

contract" or "[t]he judgment is contrary to law." Civ.R. 59(A)(5) and (7).[2] In this case, the amount of the recovery was not in error and the judgment of the jury was not contrary to law. Thus, the trial court did not err in denying IRI's motion for a new trial.

The second assignment of error is overruled.

### Assignment of Error Three

■ "The trial court erred in overruling appellant's motion for judgment notwithstanding the verdict."

With this assignment of error, IRI contends that the trial court erred in denying its motion for judgment notwithstanding the verdict because Rubbermaid's own evidence only demonstrated damages in the amount of approximately $1.3 million and not $3.2 million. The same test is used for a motion for judgment notwithstanding the verdict and a motion for a directed verdict. *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 137, 17 OBR 281, 281, 477 N.E.2d 1145, 1147. That test is set forth in the discussion of Assignment of Error One.

In this case, while Rubbermaid's evidence of the amount of damages conflicted with the evidence presented by IRI, we find substantial evidence to support Rubbermaid's position on the amount of damages. Rubbermaid submitted evidence to establish damages in an amount of nearly $4 million, but the jury returned a verdict of approximately $3.2 million. Thus, upon reviewing all the evidence submitted, we find that the trial court did not err in denying IRI's motion for judgment notwithstanding the verdict.

The third assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.

---

**2.** IRI also claims that a new trial could have been granted based upon the following Civ.R. 59(A) grounds:

"(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
" * * *
"(6) The judgment is not sustained by the weight of the evidence; * * *
" * * *
"(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application."
We find that these grounds are either inapplicable to this case or have been reviewed in another assignment of error.